■ STEPHEN STORMS, Respondent, et al., Plaintiff, v FRANCISCO VARGAS, Defendant, and CITY OF NEW YORK, Appellant. [682 NYS2d 404] —In an action to recover damages for personal injuries, etc., the defendant City of New York appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Kings County (Rappaport, J.), entered September 19, 1997, as, upon a jury verdict finding it to be 100% at fault in the happening of the accident, and upon an order of the same court, dated May 29, 1998, which granted its motion pursuant to CPLR 4404 to the extent that the verdict on the issue of damages was set aside unless the plaintiff Stephen Storms stipulated to reduce the verdict as to damages for past pain and suffering from $15,000,000 to $7,500,000, and upon Stephen Storms' stipulation so reducing the damages, is in favor of Stephen Storms and against it in the principal sum of $7,500,000 for past pain and suffering and $1,000,000 for future pain and suffering.

Ordered that the judgment is reversed insofar as appealed from, on the facts and as an exercise of discretion, with costs, and a new trial is granted on the issue of damages for past pain and suffering only, unless within 30 days after service upon Stephen Storms of a copy of this decision and order, with notice of entry, Stephen Storms shall serve and file with the office of the Clerk of the Supreme Court, Kings County, a written stipulation consenting to further decrease the verdict as to damages for past pain and suffering from $7,500,000 to $3,000,000 and to the entry of a further amended judgment in the principal sum of $4,000,000 ($3,000,000 for past pain and suffering and $1,000,000 for future pain and suffering); in the event that Stephen Storms so stipulates, then the judgment, as so further reduced and amended, is affirmed insofar as appealed from, without costs or disbursements.

In 1987 the plaintiff Stephen Storms, a police officer who was then 31 years old, suffered severe facial injuries when, while responding to an emergency call, his patrol car was involved in an accident and his face was thrust into a special steel and glass speedometer which was mounted on a steel plate on the dashboard. He thereafter commenced this action against, *inter alia*, the defendant City of New York. His wife, the plaintiff Sharon Storms, asserted derivative claims. In 1997 a jury found the City to be 100% at fault in the happening of the accident, and awarded damages. The City appeals from so much of the judgment as awarded the plaintiff Stephen Storms $7,500,000 in damages for past pain and suffering and $1,000,000 in damages for future pain and suffering. We agree

that so much of the damage award as awarded $7,500,000 as damages for past pain and suffering deviates materially from what would be reasonable compensation, and reverse and order a new trial as to those damages unless the plaintiffs stipulate to entry of an amended judgment in accordance herewith.

The force of the collision between Stephen's face and the speedometer crushed his left eye socket, face, nose, and forehead, all of which had to be surgically rebuilt. He remained hospitalized for approximately three weeks following this first surgery. The first week he was confined to bed. The second and third weeks, due to the removal of hip bone needed to rebuild his face, he spent learning how to walk again. He was also fitted with an artificial left eye, which, at the time of the trial, had been replaced seven times to account for constant changes in the eye socket. Upon his discharge, Stephen was attended 12 hours a day by a nurse. However, within a week his face began to swell and he was returned to the hospital for two and one-half months of treatment for an infection in his forehead. This was followed by a course of antibiotics that lasted over one year. During this second hospital admission, Stephen underwent four surgical procedures: one to remove a metal plate supporting his nose, two to remove dead bone material from prior grafts, and another to implant a catheter in his head to flush out the infection in his forehead. Following each surgery, he experienced pain and was confined to bed for an average of three to five days.

Over the next eight years, Stephen was admitted to the hospital on 16 occasions. Each stay lasted approximately one week. The surgeries and procedures performed included, *inter alia*, the debriding of dead bone in his forehead, the installation of a tear duct in his left eye, the removal and rebuilding of his frontal sinuses, and numerous bone, cartilage, and tissue grafts to rebuild his nose and eye socket, some of which used bone chiseled from the back of his head. In all, Stephen underwent 26 separate surgical procedures prior to trial. Further, he was unable to read for two years after the accident and, as a result of the strain to his remaining good eye (in which he formerly had perfect vision), he developed an astigmatism. This required him to wear glasses and limit his reading to ten minutes at a time. Further, he lacked depth perception, resulting in frequent collisions with objects, and had a limited field of vision. Consequently, many sport and leisure activities formerly enjoyed were no longer possible. Stephen also suffered from extended periods of depression and only slowly regained his physical stamina.

As to his future prognosis, the plaintiffs' experts testified that, due to the lack of blood in grafted bone, Stephen's bone grafts would tend to deteriorate and the body would begin an inflammatory process to purge itself of the same. Further, although 13 surgeries had already been performed, Stephen's artificial eye would require constant surgery to replace shrunken tissue, build up the eye socket area, take care of the drainage system, and address infections that will tend to recur, both deep in the orbit and superficially. This means that Stephen will be a "patient for life" and will require a surgery approximately once every two years. At the time of trial, Stephen had an estimated life expectancy of an additional 31½ years. This means that he was faced with the prospect of an additional 15 to 16 operations.

In view of this evidence, we find damages in the amount of $3,000,000 for past pain and suffering and $1,000,000 for future pain and suffering to be appropriate (*see, Stiuso v City of New York,* 228 AD2d 663; *LaPaglia v Sears Roebuck & Co.,* 143 AD2d 173; *Simon v Sears Roebuck & Co.,* 124 AD2d 655). Thus, unless the plaintiff Stephen Storms stipulates to the entry of an amended judgment, the City is entitled to a new trial on the issue of damages for past pain and suffering. In the event of entry of an amended judgment, payment for future damages is to be set according to the requirements of CPLR 5041. Further, it is noted that the Supreme Court has the discretion to award interest on the judgment at a rate of less than 9 per cent (*see, Rodriguez v New York City Hous. Auth.,* 91 NY2d 76; *Gotoy v City of New York,* 249 AD2d 268; *Gonzalez v Iocovello,* 249 AD2d 143). Rosenblatt, J. P., Ritter, Santucci and McGinity, JJ., concur.